FRITZ SCHULZ, JR., COMPANY, Respondent, *v.* RAIMES & COMPANY, Appellant.

(Supreme Court, Appellate Term, First Department, July, 1917.)

**Corporations — when not precluded from our courts — alien enemies.**

> A corporation organized under the laws of the state of New Jersey but owned principally in Germany is not precluded from access to our courts during the war.
>
> Where, though a majority of the shares of the capital stock of a corporation organized under the laws of the state of New Jersey are owned by a German corporation and a German resident in Germany, three of the four directors, including the managing director who is employed and paid by the German corporation to look after its interests here, are residents in this country, an order denying a motion to stay the corporation from further prosecuting an action in our courts made on the ground that plaintiff is an alien enemy will be affirmed.
>
> The disability of alien enemies is not a prohibition against dealings with all of the enemy nationality but is a prohibition against those who reside and do business in the enemy country.

APPEAL by defendant from an order of the City Court of the city of New York, denying a motion to stay the plaintiff from further prosecuting this action until the termination of the present war between the empire of Germany and the United States of America, which motion was made upon the ground that the plaintiff is an alien enemy.

. Gerard Roberts, for appellant.

Katz & Sommerich (Maxwell C. Katz and Otto C. Sommerich, of counsel), for respondent.

LEHMAN, J.   The plaintiff herein is a corporation organized under the laws of the state of New Jersey. Its capital stock consists of fifty shares.   Forty-seven shares are owned by a German corporation and a German citizen resident in Germany.   One share each is owned by W. H. Hoople, R. S. D'Espard and A. H. Posselt.   Mr. Posselt is the manager of the corporation and is an Austrian citizen who has declared his intention of becoming a citizen of the United States and who resides in this country.   He has always been employed and paid by the German corporation to look after its interests in this country.   Practically the entire business of the plaintiff corporation, technical as well as executive, has been managed by him. H. W. Hoople and R. S. D'Espard are American citizens and they, together with Posselt and one Fritz Philip, a citizen and resident of Germany, constitute the board of directors.   The defendant has made a motion to stay the plaintiff from further prosecuting the action until the termination of the present war between Germany and the United States of America on the ground that the plaintiff is an alien enemy. From the order denying the motion the defendant now appeals.

After a formal declaration of war it is of course illegal for any resident of the United States to have any dealings with adherents of the public enemy.   As a logical result of this rule the courts of this country have in previous wars been closed to enemy suitors upon the theory that our courts cannot or should not compel our citizens to make payments to or have deal-

ings with an enemy which under our public law would be illegal. Our courts have apparently uniformly held that though upon a declaration of war debts owing to enemies are neither cancelled nor confiscated yet payment of such debts to enemies, whether voluntary or under order of the court, is suspended during hostilities. Since the beginning of the present war, however, there has been considerable discussion and difference of opinion as to whether the courts should be closed to enemies from the very fact that legally a state of war exists or whether the existence of a state of war merely authorizes the President by proclamation or executive order to deny access to the courts to alien enemies. We need not, however, now determine whether in the absence of such a proclamation and of any formal abrogation of treaties with Germany a resident of Germany shall have access to our courts. The plaintiff in this case is a corporation organized under the laws of New Jersey and unless such a corporation can be considered a resident or adherent of an enemy country the usual disabilities of alien enemies cannot affect the present plaintiff's right of access to our courts.

The case presents the interesting question of whether a corporation organized under the laws of one of the states of this country but owned principally by alien enemies living in Germany is to be precluded during the war from access to our courts. The corporation being organized under the laws of New Jersey can, of course, be an alien enemy only if our courts have a right to look behind the corporate entity and to determine the character of the corporation by the residence and character of its members.

A somewhat similar case has recently arisen in England, reported under the name of *Daimler Company, Ltd., v. Continental Tire & Rubber Company*, and the

decisions of the Court of Appeal and of the House of Lords are reported respectively in 1 King's Bench Division, 1915, page 893, and 2 Appeal Cases, 1916, page 307. In that case it appears that all the capital stock of the corporation with the exception of a single share was held by subjects of the German Empire resident in Germany. The one share was registered in the name of the secretary of the company, who was born in Germany and resided in London and in 1910 became a naturalized subject of the Crown. All the directors were subjects of the German empire and three of the four directors were resident in Germany when the war was declared. The fourth had previously resided in England and left the country for Germany on the outbreak of the war. The trial court and the Court of Appeal both held that in spite of these facts the corporation, being organized in England, was not an alien enemy and had a right to sue in the courts of Great Britain. The House of Lords subsequently reversed that judgment upon another point but they considered it necessary to discuss the main point of the case and six of the eight judges indicated unmistakably that they considered the case wrongly decided on that point also in the court below.

In the present case the learned justice below has decided that the courts of this country should follow the decision of the Court of Appeal rather than the decision of the House of Lords on the ground that it is in line with our own public policy and decisions especially with the decision in the case of *Society for the Propagation of the Gospel* v. *Wheeler,* 22 Fed. Cas. 756 (Case No. 13156). In that case Mr. Justice Story, sitting as circuit justice, wrote an opinion in which he decided that a British corporation with British stockholders might have a right even during the war of 1812 to sue in the courts of this country, but

his decision is based entirely upon a technical point of pleading and the opinion itself is certainly no authority for the view that a domestic corporation composed of alien enemy members cannot be an alien enemy itself. In fact, when the *Daimler* case was decided in the English Court of Appeal, Bulkley, J., dissented from the prevailing opinion written by Lord Reading and he cited as authority for his views the opinion of Mr. Justice Story in this case.

It is true that Justice Story did sustain the jurisdiction of the court in spite of the fact that the writ averred that all the members of the corporation were "subjects of the king of the United Kingdom of Great Britain and Ireland," but he so decided only on the ground that such averments as pleaded did not necessarily show that the members were actually attached to the enemy or resident in enemy territory, and he could reach the conclusion that a British corporation could sue in our courts while we were at war with Great Britain only by holding that the residence or national character of a corporation was not fixed by its place of incorporation, but that the courts may determine the character of the corporation from the character of its members. "Let us now advert to the second objection, which is, that the members of the corporation are all alien enemies. In the writ, it is expressly alleged, that all the members are aliens and subjects to the king of the United Kingdom of Great Britain and Ireland. It does not, however, hence, necessarily follow that they are alien enemies. This averment in the writ was proper, if not indeed indispensable, in order to sustain the jurisdiction of this court; for the corporation, as such, might perhaps have no authority whatsoever to maintain an action here, under the limited jurisdiction confided by the Constitution of the United States to their own courts.

But in the character of its members, as aliens, we have incontestable authority to enforce the corporate rights; and it has been solemnly settled by the Supreme Court that for this purpose the court will go behind the corporate name, and see who are the parties really interested. *Bank of U. S.* v. *Deveaux,* 5 Cranch (9 U. S.) 61. And if, for this purpose, the court will ascertain who the corporators are, it seems to follow that the character of the corporators may be averred, not only to sustain, but also to bar, an action brought in the name of the corporation. It might * * * have been pleaded in this case, even if the corporation had been established in a neutral country, that all its members were alien enemies; * * * upon such a plea, with proper averments, it would have deserved great consideration, whether it was not, *pendente bello,* an effectual bar. Where the corporation is established in the enemy's country, the plea would *a fortiori* apply.'' (P. 765.)

It is to be noted, however, that the opinion in *Society for the Propagation of the Gospel* v. *Wheeler, supra,* rests upon the authority of the decision of Chief Justice Marshall in *Bank of United States* v. *Deveaux,* 5 Cranch, 61, and it would seem that the authority of that case has been much limited, if not overruled, by subsequent cases, and at the present time the courts of this country are entirely wedded to the doctrine that the corporators of a corporation are conclusively presumed to be citizens of the same state as the corporation.

Lord Reading (1 K. B. Div. 1915) in analyzing the United States cases on this subject states: '' There remains, however, the case decided in 1809, *Bank of United States* v. *Deveaux* (5 Cranch, 61), upon which much reliance was placed by Mr. Leslie Scott. The Supreme Court of the United States there decided that

the court could look beyond the corporate name and notice the character of the individuals who composed the corporation and treat them substantially as parties to the controversy. The question at issue arose from a peculiarity of the Constitution of the United States. The state courts alone have jurisdiction to try all civil actions except in certain cases reserved by the Constitution and the Judiciary Law to the federal courts. One of these reserved cases is where a citizen of one state sues a citizen of another. A suit having been brought in the federal court in the corporate name of the bank, it was held by the Supreme Court that a corporate aggregate cannot in its corporate capacity be a citizen, and therefore had no right of access to the federal court, though it was incorporated in and by one state and was suing the citizen of another state. However, Marshall, C. J., who delivered the opinion of the court, held that, although the corporation could not be a citizen, the court could look behind the corporate name to ascertain the individuals composing it, so as to determine whether they were citizens of one state suing the citizens of another. The learned Chief Justice based his judgment upon *City of London* v. *Wood*, (1701) 12 Mod. 669, which he treated as an authority for his decision that the court could look behind the corporate name. Upon an examination of that case, and notwithstanding the high authority of the learned Chief Justice, it does not support so sweeping a proposition. It was a case of a very special character. An action was brought by the mayor and commonalty of the city of London in the Court of the Mayor and Aldermen of London. Objection was taken that the mayor, who was the head of the city, without whom the city had no ability or capacity to sue, was also the very person before whom the action was brought for trial. The

Appellate Term, First Department, July, 1917. [Vol. 100.

Court of King's Bench naturally shrank from upholding a judgment given under such circumstances, and held that the objection was fatal, upon the principle that a judge must not be an interested party in the suit before him. A person cannot be both party and judge in the same suit. The familiar instance is that of a judge who is a shareholder in a railway company sued for damages. It is the judge's duty to declare his interest to the parties, and unless they agree to waive any objection he cannot try the case. The absence of such declaration and assent of the parties is the explanation of this case. It is to be observed that in the decisions of our courts this case has not been relied upon, and certainly has not been followed, as an authority for any such proposition as was argued before us.

" Since the argument an examination of American authorities has disclosed that the case of *Bank of U. S.* v. *Deveaux* (5 Cranch, 61) has not since its decision found favor in the Supreme Court of the United States. In 1844 in the case of *Louisville Railway Company* v. *Letson*, (1844) 2 How. 497, at p. 555, the Supreme Court thought that that case had gone too far, and held that, 'A corporation created by a state to perform its functions under the authority of that state and only suable there, though it may have members out of the state, seems to us to be a person, though an artificial one, inhabiting and belonging to that state, and therefore entitled, for the purpose of suing and being sued, to be deemed a citizen of that state. We remarked too, that the cases of *Strawbridge* v. *Curtis* and the *Bank* v. *Deveaux* have never been satisfactory to the bar, and that they were not, especially the last, entirely satisfactory to the court that made them. They have been followed always most reluctantly and with dissatisfaction. By no one was

the correctness of them more questioned than by the late Chief Justice who gave them. It is within the knowledge of several of us that he repeatedly expressed regret that those decisions had been made, adding, whenever the subject was mentioned, that, if the point of jurisdiction was an original one, the conclusion would be different. We think we may safely assert that a majority of the members of this court have at all times partaken of the same regret, and that whenever a case has occurred on the circuit involving the application of the case of the *Bank* v. *Deveaux*, it was yielded to because the decision had been made and not because it was thought to be right.' In 1895, in the case of *St. Louis & San Francisco Ry.* v. *James*, 161 U. S. 545, the Supreme Court again approved the view that the *Bank* v. *Deveaux* had gone too far, and held that there was an indisputable legal presumption that a corporation is composed of citizens of the state which created it, and that presumption of citizenship is one of law, not to be defeated by evidence to the contrary. Although not binding upon us, the decision of Marshall, C. J., and of the Supreme Court, is entitled to our very high respect, and this has caused us to give our most careful consideration to this judgment. It is satisfactory to find in the result that the law of the United States is that the corporation is regarded as a citizen of the state in which it is created, and is, therefore, not in conflict, but in harmony with our law.''

The principal opinion in the House of Lords written by Lord Parker of Waddington, also considers the United States cases, but draws very different deductions from them, saying (2 App. Cases, 1916, p. 341) : '' So far as I can find, this precise question has been asked heretofore once, and once only, namely in argument in the case of *Bank of United States* v. *Deveaux*.

45

The argument of Marshall, C. J., did not answer it, though he decided in favor of the party whose counsel suggested this point as part of a wider argument. Accordingly all that can be said is that the suggestion cannot have shocked that jurist, and his actual decision proceeds upon the assumption that for certain purposes a court must look behind the artificial persons — the corporation — and take account of and be guided by the personalities of the natural persons, the corporators.

" In the Court of Appeal the Lord Chief Justice expressed the opinion that the judgment of Marshall, C. J., had not been approved in later cases before the Supreme Court of the United States. I have examined the cases in question (*Louisville, Cincinnati and Charleston Railroad Co.* v. *Letson* and *St. Louis and San Francisco Ry. Co.* v. *James*) and have come to the conclusion that, so far as is material to the question in hand, they do not bear out this criticism. This is how the matter stands. Under the Constitution of the United States jurisdiction is given to the Federal Circuit Court to decide controversies between ' citizens ' of different states. In the case in question Marshall, C. J., held that an artificial person could not be a citizen for this purpose, but, not to deny justice to a corporation, he took cognizance of the corporators, and, finding them all to be citizens of the state which had incorporated the plaintiff bank, he admitted jurisdiction, treated the bank like a citizen of that state, and entertained the suit. It was afterwards, contended, and for some time with success, that this decision applied only when all the incorporators were citizens of that state, and that it required a refusal of jurisdiction when some of them were citizens of another state. It was in this stage that he expressed the doubts referred to in the judgment below. Long after

his time, the matter was at last set at rest in the case of *St. Louis, etc., Ry. Co.* v. *James,* when the court surveyed all the different phases of the controversy. What is remarkable is the way in which this was done. The federal courts did not ignore the existence of the corporators, and fixed their attention on the place where the corporation was chartered, or the state under whose laws it was registered. They continued to fix their attention upon citizen corporators, but they conclusively and incontestably presumed that they were all citizens of the state of the incorporation. Such bearing, therefore, as these cases have upon the present question, is in favor of the appellants, for it is plain that great judges, trained in the principles of the English common law, have not found it contrary to principle to look, at least for some purposes, behind the corporation and consider the quality of its members.''

This analysis of these cases by Lord Parker of Waddington is obviously not accurate. In the case of *Bank of United States* v. *Deveaux,* it appeared that the bank brought an action in the Circuit Court of the United States describing itself as '' The President, Directors, and Company of the Bank of the United States which bank was established under an act of Congress,'' etc. The record contained an averment that the plaintiffs '' are citizens of the state of Pennsylvania and the said Deveaux and Robinson are citizens of the state of Georgia.'' The court, by Marshall, C. J., decided that a corporation could not itself be a '' citizen '' within the meaning of the Judicial Act (1 U. S. Stat. at Large, 73) which limits the jurisdiction of the federal courts to '' controversies between citizens of different states.'' In order, however, to sustain the jurisdiction of the court and to carry out the evident intent of Congress, the court decided that it might con-

sider the corporation " as a company of individuals, who in transacting their joint concerns may use a legal name " and that consequently the averment that the plaintiffs are " citizens of the State of Pennsylvania" was sufficient to give jurisdiction of the action to the federal court. The principle of that case has been summed up by the Supreme Court of the United States in the case of *St. Louis & San Francisco Ry.* v. *James,* 161 U. S. 548, as follows: " Before leaving this case it should be noted that the United States Bank was not a corporation of the state of Pennsylvania, but of the United States. The decision, therefore, was to the effect that, where it appeared that a corporation plaintiff, regardless of its origin, was composed of aliens or of citizens of a different state from the defendant, the plaintiff, though suing in its corporate name, could make the averment that the individuals who composed the corporation were such aliens or citizens of a different state, and such averment, if not traversed, would sustain the jurisdiction. The principle of the case makes the individual corporators the real parties to the suit."

Of course since the United States Bank was not a corporation created by any state, the court could obviously not find that it was domiciled in any state by applying the usual rule that a corporation may be considered as domiciled in the state which created it and which has power to regulate its business. In order then to determine the residence, domicile or citizenship, if such there be, of the corporation, it was obliged to apply novel rules. In so far, however, as that case was decided upon the principle that in an action to which a corporation is a party the real parties to the suit are the corporators and that the jurisdiction of the federal court must be determined by the pleading and proof of the citizenship of the corporators, it has never

met with favor and the principle was expressly repudiated in the case of *Louisville Railroad* v. *Letson,* 2 How. 497, 557, where the court stated: " But hitherto we have reasoned upon this case upon the supposition that, in order to found the jurisdiction in cases of corporations, it is necessary there should be an averment, which, if contested, was to be supported by proof, that some of the corporators are citizens of the state by which the corporation was created, where it does its business, or where it may be sued. But this has been done in deference to the doctrines of former cases in this court, upon which we have been commenting. But there is a broader ground upon which we desire to be understood, upon which we altogether rest our present judgment, although it might be maintained upon the narrow ground already suggested. It is that a corporation, created by and doing business in a particular state, is to be deemed to all intents and purposes as a person, although an artificial person, an inhabitant of the same state, for the purposes of its incorporation, capable of being treated as a citizen of that state, as much as a natural person. Like a citizen, it makes contracts, and though in regard to what it may do in some particulars it differs from a natural person, and in this especially, the manner in which it can sue and be sued, it is substantially, within the meaning of the law, a citizen of the state which created it, and where its business is done, for all the purposes of suing and being sued."

It is true that in several subsequent cases the Supreme Court has continued to allude to the corporators as the real parties (see *St. Louis & San Francisco Ry. Co.* v. *James, supra,* and cases collated in that opinion) but the result of these decisions is that: " There is an indisputable legal presumption that a state corporation, when sued or suing in a Circuit

Court of the United States, is composed of citizens of the state which created it, and hence such a corporation is itself deemed to come within that provision of the Constitution of the United States which confers jurisdiction upon the federal courts in ' controversies between citizens of different States.' ''

Throughout all these decisions the courts have indicated practically unanimously that they regard a corporation as an entity separate and apart from its corporators; that its domicile is as a matter of law within the state of its creation and that the courts will not regard it merely as an association of individuals or regard the domicile or character of the corporators as affecting the domicile or character of the corporation. It may be that where a corporation is composed entirely of alien enemies residing in an enemy country a situation will arise requiring the interposition of a receiver or conservator to take charge of the corporate affairs because none of the members can legally deal with the corporation or actually manage its affairs; it may be that a corporation will be unable to distribute its profits for the same reason. So long, however, as a corporation created by any state still has legal existence and officers or agents with authority to do business or to bring actions, it cannot be deprived of access to the courts for the protection of its legal rights.

In so far as the House of Lords has announced a different rule in the *Daimler* case, it is not in accordance with the decisions of our courts nor with the powers of the individual state to regulate the proceedings and powers of the corporations which it creates. Even that decision, however, is not real authority for the contention of the defendant in this case. The decision of Lord Parker is summed up in these words:

'' (1) A company incorporated in the United King-

dom is a legal entity, a creation of law, with the status and capacity which the law confers. It is not a natural person, with mind or conscience. To use the language of Bulkley, J., ' It can be neither loyal nor disloyal. It can be neither friend nor enemy.'

" (2) Such a company can only act through agents properly authorized, and so long as it is carrying on business in this country through agents so authorized who reside in this or a friendly country it is *prima facie* to be regarded as a friend, and all his majesty's lieges may deal with it as such.

" (3) Such a company may, however, assume an enemy character. This will be the case if its agents or the persons in *de facto* control of its affairs, whether authorized or not, are resident in an enemy country, or, wherever resident, are adhering to the enemy, or taking instructions from or acting under the control of enemies. A person knowingly dealing with the company in such a case is trading with the enemy.

" (4) The character of individual shareholders cannot of itself affect the character of the company. This is admittedly so in times of peace, during which every shareholder is at liberty to exercise and enjoy such rights as are by law incident to his status as shareholder. It would be anomalous if it were not so also in a time of war, during which all such rights and privileges are in abeyance. The enemy character of individual shareholders and their conduct may, however, be material on the question whether the company's agents, or the persons in *de facto* control of its affairs, are in fact adhering to, taking instructions from, or acting under the control of, enemies. This materiality will vary with the number of shareholders who are enemies and the value of their holdings. The fact, if it be the fact, that after eliminating the enemy shareholders the number of shareholders remaining is

Appellate Term, First Department, July, 1917.    [Vol. 100.

insufficient for the purpose of holding meetings of the company or appointing directors or other officers may well raise a presumption in this respect. For example, in the present case, even if the secretary had been fully authorized to manage the affairs of the company and to institute legal proceedings on its behalf, the fact that he held one share only out of 25,000 shares, and was the only shareholder who was not an enemy, might well throw on the company the onus of proving that he was not under the control of, taking his instructions from, or adhering to, the king's enemies in such manner as to impose an enemy character on the company itself. It is an *a fortiori* case when the secretary is without authority and necessarily depends for the validity of all he does on the subsequent ratification of enemy shareholders. The circumstances of the present case were, therefore, such as to require close investigation and preclude the propriety of giving leave to sign judgment under Order XIV, r. 1.

"(5) In a similar way a company registered in the United Kingdom, but carrying on business in a neutral country through agents properly authorized and resident here or in the neutral country, is *prima facie* to be regarded as a friend, but may, through its agents or persons in *de facto* control of its affairs, assume an enemy character.

" (6) A company registered in the United Kingdom, but carrying on business in an enemy country, is to be regarded as an enemy."

It is to be seen that in these propositions the character of the individual shareholders cannot of itself affect the character of the company and that a company can assume enemy character only when its agents or the persons in *de facto* control, whether authorized or not, are resident in the enemy country, are adher-

ing to the enemy or taking instructions from or acting under the control of enemies.

In the case before us three of the four directors, including the managing director, are residents in this country and the corporation, therefore, is clearly within the control of residents. In considering the importance of this factor it must be remembered that the disability of alien enemies is not a prohibition against dealings with all of the enemy nationality but is a prohibition against those who reside and do business in the enemy country.

For these reasons the order should be affirmed, with ten dollars costs and disbursements.

ORDWAY, J., concurs; BIJUR, J., taking no part.

Order affirmed, with costs.