[No. 14837. Department Two. May 10, 1918.]

THE STATE OF WASHINGTON, *on the Relation of Nick Constanti, Plaintiff,* v. LESTER H. DARWIN, *as State Fish Commissioner, Respondent.*[1]

FISH—LICENSE—RIGHTS OF ALIENS—STATUTES AND PROCLAMATIONS —WAR. The fact that the country is at war with Austria-Hungary does not impel the suspension of Rem. Code, § 5150-43, entitling actual residents of the state who have declared their intention to become citizens of the United States to a fishing license; since the President's proclamation of war between the United States and Austria-Hungary, of December 11, 1917, merely prohibits subjects of that country from entering or leaving the country, and declares that, so long as they conduct themselves according to law, they shall be undisturbed in the pursuit of their occupations, as friendly aliens on a different footing from the subjects of Germany.

SAME. The fact that such subjects are not now entitled to become citizens of the United States on account of the war, under U. S. Comp. St. 1916, § 4362, is immaterial; since it cannot be said that the intention of Rem. Code, § 5150-43, was to confine the right to those entitled to become citizens at the time they apply for a license to fish.

WAR—ALIEN ENEMIES. Alien enemies who by the President's proclamation of war are recognized as friendly aliens and accorded

[1]Reported in 173 Pac. 29.

security in the undisturbed peaceful pursuit of their lives and occupations and the consideration of all law abiding citizens, are authorized to maintain actions in our courts to secure their lawful occupations.

MACKINTOSH, J., dissents.

Application filed in the supreme court May 2, 1918, for a writ of mandate to compel the state fish commissioner to issue to the relator a purse seine fishing license. Granted.

*Clinton W. Howard,* for relator.

*The Attorney General* and *Glenn J. Fairbrook, Assistant,* for respondent.

MOUNT, J.—This is an application for a writ of mandate to require the fish commissioner of this state to issue to the relator a purse seine fishing license for the Puget Sound district for the current year.

The facts are conceded as follows: The relator is a native of Austria-Hungary. He came to the United States in May, 1913, and since June of that year has been an actual resident of this state. On the 29th day of December, 1913, he regularly, and in the manner required by law, declared his intention to become a citizen of the United States. Since the year 1914, and during the years 1915, 1916 and 1917, his regular occupation has been that of a salt-water fisherman, working on fishing appliances in the Puget Sound district under fishing licenses issued by the respondent. He owns property in the city of Tacoma, is a married man, forty-five years of age, having four children, two of whom were born in Austria-Hungary, and the two youngest were born in this state.

On April 15, 1918, upon application therefor to the United States food administration, a fisherman's license was issued to the relator by that administration,

authorizing the relator to engage in the business of catching and distributing salt-water fish.

On the 29th day of April, 1918, the relator applied to the respondent, who is the duly qualified and acting fish commissioner of this state, for a purse seine fishing license for the district of Puget Sound, and tendered the amount required by law to be paid therefor. The application was denied for the reason that the applicant was not a naturalized citizen of the United States, but a citizen of Austria-Hungary, with which country the United States is at war.

This application is resisted by the *Attorney General,* upon behalf of the respondent, upon the grounds that the relator is an alien enemy and, therefore, is not entitled to maintain this proceeding, and, under the law, is not entitled to the license from this state. The statute of this state, Rem. Code, § 5150-43, provides that:

"No license for taking or catching salmon or other food or shell fish required by this act shall be issued to any person who is not a citizen of the United States of the age of eighteen years or over, unless such person has declared his intention to become a citizen, and is and has been an actual resident of the state for one year immediately preceding the application for such license. . . ."

It is plain, under this provision of the statute, that the relator, being an actual resident of the state for more than one year prior to the application, and having declared his intention to become a citizen of the United States, is entitled to the license he seeks, unless the fact that this country is at war with Austria-Hungary impels the suspension of the statute in so far as applicants are not citizens of the United States. On December 7, 1917, the Congress of the United States passed a resolution that a state of war is declared to

exist between the United States of America and the
Imperial and Royal Austro-Hungarian Government.
Thereafter, on December 11, 1917, the President, in
pursuance of that resolution, and in pursuance of
§§ 4067, 4068, 4069 and 4070, of the Revised Statutes of
the United States relative to natives, citizens, deni-
zens, or subjects of a hostile nation or government,
issued a proclamation as follows:

"Now, therefore, I, Woodrow Wilson, President of
the United States of America, do hereby proclaim to
all whom it may concern, that a state of war exists
between the United States and the Imperial and Royal
Austro-Hungarian Government;

"And, acting under and by virtue of the authority
vested in me by the constitution of the United States
and the aforesaid sections of the revised statutes, I
do hereby further proclaim and direct that the con-
duct to be observed on the part of the United States
towards all natives, citizens, denizens, or subjects of
Austria-Hungary, being males of the age of fourteen
years and upwards, who shall be within the United
States and not actually naturalized, shall be as fol-
lows:

"All natives, citizens, denizens, or subjects of Aus-
tria-Hungary, being males of fourteen years and up-
wards, who shall be within the United States and not
actually naturalized, are enjoined to preserve the peace
towards the United States and to refrain from crime
against the public safety, and from violating the laws
of the United States and of the states and territories
thereof, and to refrain from actual hostility or giving
information, aid or comfort to the enemies of the
United States, and to comply strictly with the regu-
lations which are hereby or which may be from time to
time promulgated by the President; and so long as
they shall conduct themselves in accordance with law,
they shall be undisturbed in the peaceful pursuit of
their lives and occupations and be accorded the con-
sideration due to all peaceful and law-abiding persons,
except so far as restrictions may be necessary for their

own protection and for the safety of the United States; and towards such of said persons as conduct themselves in accordance with law, all citizens of the United States are enjoined to preserve the peace and to treat them with all such friendliness as may be compatible with loyalty and allegiance to the United States.

"And all natives, citizens, denizens or subjects of Austria-Hungary, being males of the age of fourteen years and upwards, who shall be within the United States and not actually naturalized, who fail to conduct themselves as so enjoined, in addition to all other penalties prescribed by law, shall be liable to restraint, or to give security, or to remove and depart from the United States in the manner prescribed by sections four thousand and sixty-nine and four thousand and seventy of the Revised Statutes, and as prescribed in regulations duly promulgated by the President;

"And pursuant to the authority vested in me, I hereby declare and establish the following regulations, which I find necessary in the premises and for the public safety:

"(1)  No native, citizen, denizen or subject of Austria-Hungary, being a male of the age of fourteen years and upwards and not actually naturalized, shall depart from the United States until he shall have received such permit as the President shall prescribe, or except under order of a court, judge, or justice, under sections 4069 and 4070 of the Revised Statutes;

"(2)  No such person shall land in or enter the United States, except under such restrictions and at such places as the President may prescribe;

"(3)  Every such person of whom there may be reasonable cause to believe that he is aiding or about to aid the enemy, or who may be at large to the danger of the public peace or safety, or who violates or attempts to violate, or of whom there is reasonable ground to believe that he is about to violate any regulation duly promulgated by the President, or any criminal law of the United States, or of the states or territories thereof, will be subject to summary arrest by the United States marshal, or his deputy, or such other officer as the President shall designate, and to confine-

ment in such penitentiary, prison, jail, military camp, or other place of detention as may be directed by the President.

"This proclamation and the regulations herein contained shall extend and apply to all land and water, continental or insular, in any way within the jurisdiction of the United States."

On the next day after this proclamation was issued, the Attorney General of the United States, referring to it, said:

"This proclamation differs from the preceding proclamation relating to the subjects of the German Empire in that, while it authorizes the arrest and internment of any subjects of the dual empire whose conduct may be a menace to the safety of the country, the only restrictions which it contains are prohibitions against either entering or leaving the United States without first obtaining permission.

"Many subjects of Austria-Hungary have already demonstrated their strong loyalty to this country by their faithfulness in industrial work, their organization of recruiting committees, and in service with our armies. For the present, therefore, no restrictions will be placed upon the movements of subjects of Austria-Hungary. They are not subject to the restrictions of the previous proclamations relating to German enemy aliens; they will be permitted to reside and labor in prohibited areas and to travel freely without molestation. Only those who are dangerous or disloyal are subject to arrest."

It seems plain, under this proclamation, that, though the relator may be an alien enemy because he has not been naturalized, yet there is nothing in this proclamation which treats a native of Austria-Hungary as an alien dangerous to the peace and safety of the country. The proclamation declares, with reference to such persons, that

"so long as they shall conduct themselves in accordance with law, they shall be undisturbed in the peace-

ful pursuit of their lives and occupations and be accorded the consideration due to all peaceful and law-abiding persons, . . ."

and that

"all citizens of the United States are enjoined to preserve the peace and to treat them with all such friendliness as may be compatible.with loyalty and allegiance to the United States."

So it is apparent that this proclamation recognizes such persons as friendly aliens, and not as alien enemies. That the legislature may prohibit any but citizens of this state and of the United States from receiving a fishing license within the state admits of no doubt. It has not done so. That the Federal government may establish the status of a subject of an enemy country residing within the United States also admits of no doubt. It has done so by authorizing the proclamation above quoted. That the Federal government, or the President of the United States under authority of Congress, may nullify the statute with reference to permitting privileges to aliens who have declared their intention to become citizens of the United States admits of no doubt. In our opinion, this has not been done. But before the terms of the statute may be nullified or suspended by Congress, or by the President acting under authority of Congress, the intention to do so must be clear. We think such intention is not clear. On the other hand, it seems entirely clear that the proclamation of the President relating to natives of Austria-Hungary, quoted above, intended to preserve the rights of such persons in this country to follow their peaceful pursuits and occupations and to accord them the consideration due to all peaceful and law-abiding persons under the law of their domicile. As confirming this position, the food administration, acting under authority of Congress, has issued to this

relator, knowing his nationality and his status, a license "to engage in the business of catching and distributing salt water fish, shellfish and crustaceans."

The respondent argues that it was the intention of the legislature, in enacting Rem. Code, § 5150-43, above quoted, to confine the right of fishing in this state to citizens, or to those entitled to become citizens; and that, since § 4362 of the Compiled Statutes of the United States of 1916 provides that,

"No alien who is a native citizen or subject, or a denizen of any country, state, or sovereignty with which the United States is at war, at the time of his application, shall be then admitted to become a citizen of the United States,"

the relator is not entitled to become a citizen of the United States, and for that reason the respondent was justified in refusing to issue the license.. It is true, relator is not *now* entitled to be admitted to citizenship. He declared his intention to become a citizen in December, 1913. The time of residence does not expire until December, 1918. He will then have two years in which to make his final proof and become a naturalized citizen. So it is apparent that the relator may not at this time become a citizen. In due time, he may, or he may not, as future events develop. We think this point is entirely immaterial, because the statute says a person who has declared his intention to become a citizen and has been a resident of the state for one year immediately preceding his application shall be entitled to such license. The legislature meant what it said in that respect. It made no exceptions, and, since the statute has not been suspended or nullified by higher authority, it is still in force and must be followed.

We think it clear that the relator is entitled to prosecute this action for the writ. If such persons shall be

undisturbed in the peaceful pursuit of their lives and occupations and be accorded the consideration due all peaceful and law-abiding persons, we think it follows that they are authorized to maintain actions to secure to themselves their lawful occupations. *Fritz Schultz, Jr., Co. v. Raimes & Co.,* 99 Misc. Rep. 626, 164 N. Y. Supp. 454; *Id.,* 100 Misc. Rep. 697, 166 N. Y. Supp. 567; *Speidel v. Barstow Co.,* 243 Fed. 621; *Porter v. Freudenberg,* 1 K. B. 857, Ann. Cas. 1917C 215.

We are of the opinion, therefore, that the relator is entitled to the license and is authorized to maintain the action.

The writ will therefore issue as prayed for.

ELLIS, C. J., FULLERTON, and PARKER, JJ., concur.

MACKINTOSH, J. (dissenting)—The relator being a subject of a country with which we are at war, cannot resort to our courts. As I read it, the President's proclamation does no more than preserve to the subjects of Austria-Hungary the privilege of peaceful life and work in this country, and does not attempt to abrogate the rule of law which closes our courts to them during war time. I therefore dissent.