[Civ. No. 2838.   Fourth Dist.   June 2, 1942.]

BUNTARO MATSUDA et al., Respondents, v. JOE LUOND et al., Appellants.

454

Monroe & McInnis for Appellants.

Dempster McKee for Respondents.

MARKS, J.—This is an appeal from a judgment awarding each plaintiff, separately, damages for injuries suffered in an automobile accident which happened at about 9 o'clock on the morning of June 29, 1940, on Highway 101, a little less than a mile north of Encinitas in San Diego County.

Buntaro Matsuda is a foreign-born Japanese subject who was, and had been, a resident of San Diego County. Toshi Matsuda, 17 years of age, and Satoshi Matsuda, 15 years of age, his sons, were both born in this country and are citizens of the United States. On July 25, 1940, Buntaro Matsuda was appointed guardian ad litem of his sons and as such brought this action for them.

After a state of war was declared between Japan and the United States, Koichi Nakamura, an American citizen of Japanese ancestry, was appointed general guardian of the minors and has been substituted in the action in the place of the guardian ad litem.

The first question to be considered is the right of Buntaro Matsuda, a subject of a country with which we are at war, to appear in this action.

It may be stated that, historically, as a general rule, an enemy has been denied access to the courts of this country during a time of war. (*Caperton* v. *Bowyer,* 14 Wall. (U. S.) 216 [20 L. Ed. 882].) However, the former rigorous rule has been much relaxed by the definition of an enemy.

Section 2 of the Trading With the Enemy Act, passed October 6, 1917, (Appendix, 50 U. S. C. A., p. 191) defines the word "enemy." Buntaro Matsuda belongs to the class

dealt with in subdivision *c* of that section which provides as follows:

"Such other individuals, or body or class of individuals, as may be natives, citizens, or subjects of any nation with which the United States is at war, other than citizens of the United States, wherever resident or wherever doing business, as the President, if he shall find the safety of the United States or the successful prosecution of the war shall so require, may, by proclamation, include within the term 'enemy'."

So far as we are advised, the President has not issued a proclamation denying access to federal or state courts to citizens of Japan who are and have been for several years before the outbreak of war, actual bona fide residents of the United States. Until such a proclamation is issued declaring such a person to be an enemy, it seems clear that Buntaro Matsuda has the right to appear in this court by his counsel and defend the judgment which he obtained on May 21, 1941. His right to collect his portion of the judgment after it becomes final is a question neither presented nor decided here.

On January 31, 1942, the Attorney General of the United States issued a release which concluded as follows:

"Accordingly, it is important to note that no native, citizen, or subject of any nation with which the United States is at war and who is a resident in the United States is precluded by federal statute or regulations from suing in federal courts or state courts."

The same conclusion was reached by the Hon. Emmet H. Wilson, judge of the Superior Court of Los Angeles County, in a carefully considered opinion filed in *In the Matter of the Application of Erwin Heinrich Kohn, for change of name.* He cites the following cases as supporting his conclusions: *Arndt-Ober* v. *Metropolitan Opera Co.,* 102 Misc. 320 [169 N. Y. Supp. 304]; affirmed, 182 App. Div. 513 [169 N. Y. Supp. 944]; *Hughes* v. *Techt,* 188 App. Div. 743 [177 N. Y. Supp. 420]; affirmed in *Hughes* v. *Techt,* 229 N. Y. 222 [128 N. E. 185, 11 A. L. R. 166]; certiorari denied, 254 U. S. 643 [41 S. Ct. 14, 65 L. Ed. 454]; *Heiler* v *Goodman's etc. Co.,* 92 N. J. L. 415 [105 Atl. 233, 3 A. L. R. 336]; *State* v. *Darwin,* 102 Wash. 402 [173 Pac. 29, L. R. A. 1918F, 1012]; *Krachanake* v. *Acme Mfg. Co.,* 175 N. C. 435 [95 S. E. 851, Ann. Cas. 1918E, 340 L. R. A. 1918E, 801], *Posselt* v. *D'Espard,* 87 N. J. Eq. 571 [100 Atl. 893]; *Mittelstadt* v. *Kelly,* 202 Mich. 524 [168 N. W. 501].

█ The evidence in this case is sharply conflicting on the questions of negligence and contributory negligence. As conflicts in the evidence are addressed to and settled by the trier of fact, we will confine our summary of the evidence to that which tends to support the findings and judgment and will disregard other contradictory evidence.

Highway 101 runs in a general northerly and southerly direction at the place of the accident. It was paved and four traffic lanes were marked on it, with a double line in its center, except at street intersections. The two easterly lanes were used by northbound vehicles and the two westerly lanes by southbound traffic. There was a row of cypress trees growing on the easterly side of the pavement. At the place of the accident the highway was intersected at right angles by an unimproved road. School or pedestrian crossings were marked across Highway 101 on the northerly and southerly sides of the intersection. There was a stop sign on the northerly side of the unimproved road which was probably about 2 feet easterly from the edge of the pavement.

Buntaro Matsuda owned a 1930 Model A Ford truck which his two sons were using on the morning of the accident to drive from their home about one-half mile easterly from Highway 101 to a Japanese language school situated westerly from the intersection. Toshi Matsuda was driving the truck westerly over the unimproved road. His younger brother was sitting on the seat beside him. He stopped the truck about 6 feet easterly from the stop sign and waited for a southbound car to clear the intersection. He looked to the south and saw the automobile owned by defendant Joe Luond and driven by defendant Lena Furrer approaching from the south and distant between 500 and 600 feet from him. This car was traveling in the traffic lane lying easterly of and next to the double line. He proceeded into the intersection at a speed of about five miles an hour. After he was on the pavement he again looked to the south and saw the defendants' car approaching in the same traffic lane at a speed which he estimated at fifty-five miles an hour and which was then distant 200 or more feet from him. Elsewhere in his testimony he estimated the speed of the defendants' car at between fifty-five and sixty miles an hour. His brother estimated its speed at between fifty and sixty miles an hour.

The two vehicles came together at about the point of the intersection of the double center line of the pavement with the center line of the northerly pedestrian crossing. The right

front of defendants' automobile struck the left side of the truck at about the front edge of the door of the cab. At the time of the impact the front wheels of the truck were on the westerly side of the double center line of the pavement. The force of the impact turned the truck completely around and tipped it over on its side so that when it came to rest it was facing east. The wheels of defendants' car left tire marks on the pavement for a distance of 72 feet from the point of impact. These tire marks show that Mrs. Furrer turned the car rather sharply to her left just before the impact so that her left front wheel was either on, or westerly of, the double center line when the vehicles collided. The two youths were seriously injured. The award to Buntaro Matsuda was for damages to his truck and expenses resulting from the injuries to his sons.

Defendants argue that there was no evidence of negligence on the part of Mrs. Furrer that was a proximate cause of the accident. This argument is based on her testimony that she was driving at a speed of not more than forty-five miles an hour; that the two boys appeared suddenly on the road in front of her, too close for her to avoid the collision, and on the assumption that the only evidence contradicting her testimony as to her speed was the evidence of her statement to witnesses, which she denied making, that her speed was fifty miles an hour. This assumption completely overlooks the testimony of Toshi and Satoshi Matsuda on this question which we have already outlined. This evidence was before the trial judge and he was privileged to accept it as true. Therefore, he could have concluded that just before the collision Mrs. Furrer was driving over fifty miles, and as much as sixty miles an hour.

The prima facie speed limit on Highway 101 at that time and place was forty-five miles an hour, if the intersection was not an obstructed one, and twenty-five miles an hour if it was an obstructed intersection, which some of the evidence suggests. (§ 511, Veh. Code.) All references to that code will be as it existed on the date of the accident.

While exceeding the prima facie speed limit is not negligence as a matter of law, (§ 513, Veh. Code) excessive speed may be negligence as a matter of fact and if it proximately causes an accident will support a judgment against the guilty party. Under the circumstances here the questions of the negligence of Mrs. Furrer, and proximate cause, were questions of fact addressed to the trial judge and were settled by

his finding that she was negligent and that her negligence proximately caused the collision. (*Mecchi* v. *Lyon Van & Storage Co.*, 38 Cal. App. (2d) 674 [102 P. (2d) 422, 104 P. (2d) 26]; *Mason* v. *Crawford*, 17 Cal. App. (2d) 529 [62 P. (2d) 420].)

It is argued that as the complaint alleged negligence in general terms, and as the findings followed the pleadings, we are left to speculate on whether the trial judge considered the speed at which Mrs. Furrer was driving was negligence which was a proximate cause of the collision. This argument entirely overlooks the duty of an appellate court to draw reasonable inferences from the evidence.

An inference is a deduction which the reason of the trier of fact may make from proven facts. (*Juchert* v. *California Water Service Co.*, 16 Cal. (2d) 500 [106 P. (2d) 886].) In reviewing the sufficiency of the evidence to support a judgment, it is the duty of an appellate court to resolve all conflicts in the evidence in favor of the prevailing party and to draw all legitimate and reasonable inferences from the evidence in his favor. (*Bellon* v. *Silver Gate Theatres, Inc.*, 4 Cal. (2d) 1 [47 P. (2d) 462]; *Crawford* v. *Southern Pacific Co.*, 3 Cal. (2d) 427 [45 P. (2d) 183]; *Mah See* v. *North American Acc. Ins. Co.*, 190 Cal. 421 [213 Pac. 42, 26 A. L. R. 123].) With these rules before us we must conclude that the evidence justifies an inference that the speed at which Mrs. Furrer was driving was negligence that was a proximate cause of the accident.

Defendants maintain that it was not negligence *per se* for Mrs. Furrer to drive in the traffic lane immediately to her right of the double center line of the pavement instead of in the other traffic lane on the right edge of the pavement as plaintiffs maintain was required by the provisions of section 525 of the Vehicle Code. It has been held that this section of the Vehicle Code was passed for the benefit of motorists traveling in the same direction. (*Arundel* v. *Turk*, 6 Cal. App. (2d) 162 [44 P. (2d) 383]; *Polk* v. *Weinstein*, 12 Cal. App. (2d) 360 [55 P. (2d) 588]; *Lewis* v. *Western Truck Line*, 44 Cal. App. (2d) 455 [112 P. (2d) 747].)

Defendants maintain that Toshi Matsuda was guilty of contributory negligence as a matter of law because he did not make his boulevard stop at the point required by section 577 of the Vehicle Code, which provides as follows:

"The driver of any vehicle upon approaching any entrance of a highway or intersection signposted with a stop sign as

provided in this code, except as otherwise permitted or directed in this code, shall stop before entering the nearest crosswalk or, if none, then at a limit line when marked, otherwise before entering such highway or intersection.''

It is admitted that there was neither a crosswalk nor a limit line on the side road as it entered the intersection. Therefore the only provision of the section applicable here is the one requiring a vehicle to be stopped ''before entering such highway or intersection.''

Both youths testified that the stop was made when the front of the truck was about 6 feet from the stop sign, and at a point where the driver had a view of the highway for 600 feet to his left and an undetermined distance to his right. This must be held to be substantial compliance with the provisions of the section. This substantial compliance with the law defeats the claim of negligence *per se,* and the finding that there was no contributory negligence negatives any inference of negligence as a matter of fact, if any such reasonable inference might have been drawn from all the evidence.

The judgment is affirmed.

Barnard, P. J., and Griffin, J., concurred.