[S. F. No. 1801.   Department Two. — July 30, 1901.]

## C. S. OLSEN, Respondent, v. W. H. BIRCH & CO. et al., Appellants.

ACTIONS AGAINST STEAMERS, VESSELS, AND BOATS — JURISDICTION — ADMIRALTY — CONSTITUTIONAL LAW. — Sections 813 to 827 of the Code of Civil Procedure, relating to "actions against steamers, vessels, and boats," are not invalid as being in conflict with section 2 of article III of the constitution of the United States, and with section 711 of the Revised Statutes of the United States, conferring exclusive jurisdiction upon the Federal courts in cases of admiralty and maritime jurisdiction, saving to suitors the right to a common-law remedy, notwithstanding a suit might be brought under those sections, of which the courts of the state would have no jurisdiction.

ID. — VALIDITY OF LIENS NOT DEPENDENT UPON REMEDY. — The liens given by the Code of Civil Procedure against steamers, vessels, and boats are valid, irrespective of the question whether an action can or cannot be brought in the state court to enforce them.

ID. — MARITIME CONTRACTS — VESSEL NOT IN USE — CONSTRUCTION — SERVICES OF CREW — JURISDICTION OF STATE COURT. — Maritime contracts have reference to navigation upon the sea, and in some way to vessels actually used in commerce or navigation.   An action under the code to enforce liens for work done in construction and for services rendered by members of the crew on board of a steamship which has never been in commission, nor used in navigation, is not based upon a maritime contract; and if the state court has acquired jurisdiction of the person of the owner, who has appeared and answered, and the vessel has not been seized, it has jurisdiction to enforce the liens by order of sale under execution.

ID. — ACTION IN PERSONAM — ADMIRALTY ACTION IN REM. — The action against the owner personally to enforce the liens against his vessel by judgment, and order of sale thereunder, is *in personam,* and is not the action *in rem* used in courts of admiralty.

ID. — ASSIGNED CLAIM FOR SERVICES OF CREW — AMBIGUITY — FINDINGS — DEFENDANT NOT INJURED. — A complaint alleging an assigned claim for services of members of the crew on board the steamship does not necessarily imply that the vessel was engaged in commerce, but the allegation may be applied to a force put on board the vessel to care for it before it was put in commission; and where the findings show the latter case in fact, the defendant could not be injured, even if the court improperly refused to sustain a special demurrer for the ambiguity.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. J. M. Seawell, Judge.

The facts are stated in the opinion of the court.

E. L. Campbell, and J. S. Spilman, for William H. Birch & Co., Appellants.

Reddy, Campbell & Metson, for Yukon and Northwestern Dredging and Transportation Company, Appellant.

H. W. Hutton, for Respondent.

TEMPLE, J. — This action was brought to foreclose liens upon the steamship City of Dawson, which was constructed at San Francisco in 1898, by the appellants, as owners. The complaint contains three causes of action. The first is for two hundred dollars, due plaintiff for services in the construction of the ship. The other two are upon assigned claims. One is a claim of Frank Green for services as chief engineer, rendered on board said steamship, and "as a member of her crew." The other is the claim of A. R. F. Brandes, a freight clerk, rendered on board said steamship, as a member of her crew.

It was found that the services of plaintiff were rendered in building a house on the steamship, and the services of Green were rendered while the steamship was "not engaged in active operation, and was not in commission." It was found that Brandes performed service as freight clerk for the Yukon and Northwestern Dredging Company, but the service was not performed on said steamship, nor as a member of her crew, or for her.

The other defendant was found to have a claim against the ship, for constructing the same, but no judgment was rendered in favor of said defendant.

The first two points raised by the appellants may be considered together, and practically they are: 1. That the law is invalid, as in conflict with section 2 of article III of the constitution of the United States, which declares that the jurisdiction of the Federal courts shall extend to all cases of admiralty and maritime jurisdiction; and 2. That jurisdiction of the state courts is forbidden by section 711 of the Revised Statutes of the United States. This statute declares that " the jurisdiction of the Federal courts of cases of admiralty and maritime jurisdiction is exclusive, saving to suitors in all cases the rights of a common-law remedy where the common law is competent to give it."

. The statutes here called in question are certain sections of the Code of Civil Procedure. (Secs. 813 et seq.) The matter is the more interesting because (as is well known to the writer of this opinion) these sections were carefully revised by the late Stephen J. Field after and in view of the decisions in *The Moses Taylor*, 4 Wall. 431, and *The Hine* v. *Trevor*, 4 Wall. 571; and in the report of the so-called code revisers, which was written by Judge Field, the claim was made, that for the first time these sections had been made valid. But I think we need not enter very fully into this discussion. The code provisions are certainly not invalid, although a suit might be brought under them of which the courts of the state would have no jurisdiction. If the claim sued upon was one arising from a maritime contract, and the owners were unknown, or if the owner could not be found, and the summons was only served upon the master, mate, or other person in charge of the vessel, a serious question would be presented. But here the owner has appeared and answered, and the action is against him by name, and the claim asserted did not arise upon a maritime contract. And it may be added, the suit is not a proceeding *in rem.* And, of course, the statute giving the right to a lien would be perfectly valid, although no action could be brought under it in the state courts.

The claim did not arise from a maritime contract. The vessel had never been in commission, or in active use in navigation. Maritime contracts have reference to navigation upon

the sea, and in some way to vessels actually being used in commerce, or at least in navigation.

Counsel agree that liens to secure claims of those who have contributed to the construction of vessels are non-maritime, but appellants seem to contend that because the findings state that the labor of plaintiff was performed in the construction of a house upon the City of Dawson, and the assignors of the other claims rendered their services as members of the crew on board the vessel, the vessel was complete before the services were rendered, and therefore the liens are for securing maritime contracts. It is.found that the vessel had not been used in navigation. It seems true, that if the vessel was employed in navigation, it would still have been at least doubtful whether the contract for the construction of the house was a maritime contract, but, the vessel not being at the time employed in navigation, and never having been so engaged, the contract was not maritime. This is completely settled by the case of *William* v. *The Sirius*, 65 Fed. Rep. 226, and by the authorities quoted by the learned judge in that case. The libelant there claimed a lien under these provisions of our code, for services rendered as watchman, or ship-keeper. The vessel had been engaged in commerce, but was sold in San Francisco under a *venditioni exponas* issued from the district court. It was a British ship, but had not been enrolled as an American vessel after the sale, and was not in commission. After reviewing the authorities, the court was unable to hold that the services were of a maritime character, and therefore there was no lien, under our state law, cognizable in a court of admiralty.

The Sirius had been engaged in navigation, but was laid up in her home port, and was unregistered and out of commission. The point of the decision seems to be, that the services, though rendered on the vessel, were not in furtherance of navigation, but were to preserve the vessel.

A few authorities apparently holding a contrary doctrine are cited by appellants. (*The Eliza Ladd*, 3 Saw. 519; *The Revenue Cutter No. 2*, 4 Saw. 143; *The Manhattan*, 46 Fed. Rep. 797.)

The reasoning in the cases is similar, but *The Manhattan*, 46 Fed. Rep. 797, is the more elaborate, and apparently most relied upon. In that case the hull was first built under contract and then floated to a different point, where the ship was completed under a new contract. Proceedings *in rem* were insti-

tuted to recover upon this contract, and the jurisdiction of the district court was challenged on the ground that the contract was not of a maritime character. Judge Hanford referred to the fact that contracts for building ships are not maritime, while contracts for repairing and rebuilding ships are. And he said (correctly, I think) that it could make no difference whether the same work was done upon a new hull or an old hulk, and then added: "After a new ship has been launched and embraced by the element upon which she is intended to float, and been christened, and become an entity fully capable of being identified, she is as much a subject of admiralty and maritime jurisdiction as she can be at any later period of her history; and contracts then entered into relating to her completion, equipment, or employment are maritime, and cognizable in admiralty."

Evidently there is here a misapprehension as to the basis of admiralty jurisdiction. It does not extend to ships, merely because they are ships, but to commerce and navigation, and to ships only because they are, and while they are, used in commerce and navigation. A ship while building is not an instrument of commerce, nor is she while out of commission, and being cared for to preserve her for possible future use.

A ship injured by use, and only temporarily laid up for repairs, or being refitted that she may resume her voyage, is considered still engaged in commerce.

But this suit is not a proceeding *in rem*. Had the contract been maritime, a proceeding *in rem* could have been had in the district court; nevertheless, if a common-law remedy could have been made available, such remedy could have been afforded by the state court. Here the action is against the owner, and such owner has appeared and answered. The vessel was not seized, and there was actual service of summons. The main difference between an action *in rem* and an action *in personam* is indicated by the two phrases. One is against the thing as the defendant, and the judgment is that the thing is indebted; and, furthermore, the *res* is taken possession of and held by the court, and its jurisdiction depends upon such possession and holding. Here, the judgment is against the owner, and the sale of the property, if one is had, will be like an ordinary sale under execution.

Such proceedings are said to be *quasi in rem*, which phrase has become quite common since *Pennoyer* v. *Neff*, 95 U. S. 714.

It is there said that such proceedings are not strictly *in rem*, because they are not against the thing as debtor. The subject is discussed by Waples on Proceedings in Rem (c. 56). And the right to maintain such suits in the state courts has been upheld by the supreme court of the United States. (*Leon* v. *Galceron*, 11 Wall. 185; *Johnson* v. *Chicago Elevator Co.*, 119 U. S. 388; *The Glide*, 167 U. S. 606.) In the last case the jurisdiction of courts of admiralty was sustained, but the law required the suit to be against the vessel, and provided for a seizure of the ship through attachment. The court says of the proceeding *in rem:* " While the proceeding differs thus from a common-law remedy, it is also essentially different from what are, in the West, called suits by attachment, and in some of the older states, foreign attachments. In these cases there is a suit against a personal defendant by name, and because of inability to serve process on him on account of non-residence, or for some other reason mentioned in the various statutes allowing attachments to issue, the suit is commenced by a writ directing the proper officer to attach sufficient property of the defendant to answer any judgment which may be rendered against him. This proceeding may be had against an owner or part owner of a vessel, and his interest thus subjected to a sale in a common-law court of the state." The foreign attachment suits here referred to are the proceedings *quasi in rem*, elsewhere alluded to. In such case, when the defendant is personally served, or appears in the case, the suit is really an ordinary action *in personam*. The act of Congress did not have the effect of denying to state courts jurisdiction, except to enforce the action *in rem*, as that action was known to courts of admiralty. An action to foreclose a lien against the defendant personally, unaccompanied by seizure or constructive service of process, was not the action *in rem* in use in courts of admiralty.

The objection special to the judgment upon the assigned claims is, that the allegation is that such services were rendered on board the vessel, and as members of her crew, which, it is said, is an allegation that the vessel was engaged in commerce. That may be admitted to be the most obvious and ordinary meaning of the language. But the words may be also applied, as the findings show they were here, to a force put on board a vessel to care for it, before the ship has been enrolled or is in

commission, merely for the preservation of the ship.    Perhaps there was an ambiguity which was reached by special demurrer, but the complaint could easily have been amended. And if the court improperly refused to sustain such demurrer, and the complaint was therefore not amended, it is perfectly obvious, in this case, that the defendants were not and could not have been injured.

Judgment affirmed.

McFarland, J., and Henshaw J., concurred.