[Civ. No. 11852.   First Dist., Div. Two.   Feb. 11, 1942.]

G.  BALESTREIRI,  Respondent,  v.  D.  J.  ARQUES, Appellant.

H. W. Hutton, Erwin C. Easton and George Olshausen for Appellant.

William B. Acton, Charles H. Brennan and O'Brien, Dibert & Acton for Respondent.

SPENCE, J.—In this action for declaratory relief, judgment was entered decreeing that defendant Arques had no possessory lien on the vessel "St. Mary" at the time that plaintiff took possession thereof on September 23, 1935. Defendant Arques alone appeals from said judgment and he will be hereinafter referred to as "defendant."

The parties dwell at length upon the background of this litigation but the essential facts may be briefly stated. The vessel in question was originally a towboat which belonged to one Coughlin and was named the "Oregon." In 1933, she ran

upon a submerged pile in the Oakland Estuary and stove a hole in her bottom. She was patched and towed to the mud flats in Richardson Bay where she lay for some time. In 1934 she was taken to the shipyard of defendant in Sausalito and was repaired. The repairs were completed and a bill was presented but Coughlin was unable to make payment. Some time passed and in the spring of 1935, Coughlin and defendant agreed that the vessel should be sold. Plaintiff learned that the vessel was for sale and he inspected it with the thought that it might be converted into a purse seiner. Discussions took place between plaintiff, defendant, Coughlin and others at defendant's shipyard. Defendant represented that the vessel could be made into a purse seiner and Coughlin told plaintiff that if plaintiff could finance the necessary work he would transfer to plaintiff a half interest in the vessel. Plaintiff brought a representative of a marine engine company to the shipyard. Further discussions were had and said representative recommended that an engine costing about $18,000 should be installed. During said discussions, neither defendant nor Coughlin made any mention of the repairs which had been made by defendant for Coughlin in 1934 below the water line of said vessel. At one point in the discussions plaintiff asked Coughlin and defendant if Coughlin owed any money on the boat and Coughlin answered ''that he didn't owe a dime on the boat—there was no lien.'' Defendant made no reply. Thereafter plaintiff entered into an agreement with Coughlin and the latter transferred to plaintiff a half interest in the boat with the knowledge of defendant.

In June, 1935, plaintiff, defendant and Coughlin met at the shipyard and a written agreement was entered into by the three men by which defendant agreed to do certain work on the hull of the boat for $4,300, of which $1,000 was to be paid on the execution of the agreement, $1,000 on July 1, and the balance was to be paid by notes over a period of time. The work was to be completed within thirty days after delivery of the engine. The engine was delivered on August 16. The two $1,000 payments were made as agreed. While the work was progressing plaintiff and Coughlin incorporated the Sardine Fishing Company and transferred the vessel to said corporation.

On September 20, 1935, and after the time agreed upon for the completion of the work had expired, a dispute arose when defendant made a claim for certain alleged "extras." The agreed work had not then been fully completed. Plaintiff was advised that the vessel could not leave the shipyard and that defendant would not complete the agreed work until the bill for extras had been approved. Plaintiff had arranged for other work to be done on the boat in San Francisco and was anxious to get all work completed as the fishing season had begun on August 15. Plaintiff offered to arbitrate the matter and to put up a bond to protect defendant against any valid claim but plaintiff refused to approve the bill for the alleged extras.

On September 23, 1935, plaintiff advised defendant that he was coming over to take the vessel to San Francisco on the afternoon high tide. A heated discussion followed plaintiff's arrival at the shipyard, but plaintiff finally took the boat during defendant's temporary absence. Thereupon defendant's counsel filed a libel in admiralty covering all claims for the 1935 repairs. Plaintiff filed a bond for the release of the vessel and at the time of the approval thereof, mention was first made to plaintiff of an alleged claim for 1934 repairs.

Defendant then caused the arrest of plaintiff on a charge of grand theft upon the theory that plaintiff had wrongfully taken the vessel from the possession of defendant in violation of defendant's alleged possessory lien. (*People* v. *Cain,* 7 Cal. App. 163 [93 Pac. 1037].) Plaintiff was held to answer and was subsequently tried by a jury in the Superior Court of Marin County. The jury found him guilty but recommended leniency. The trial court granted probation upon condition that plaintiff give a bond securing defendant "against any detriment or loss for or on account of any valid claim of possessory lien which Donlon J. Arques may have had for money due him on the day the 'St. Mary' was taken from his possession, for work done or materials furnished said vessel." At the suggestion of the trial judge in the criminal proceeding, this action for declaratory relief was commenced by plaintiff shortly thereafter.

Plaintiff alleged the essential facts above set forth. He further alleged that the money alleged to be due to defendant was owing by Coughlin and not by plaintiff; that he did not

know and could not ascertain "what lien, if any, said Arques had against said vessel on said September 23rd, 1935, nor the amount of any such lien"; that Coughlin, in the presence of defendant and with the knowledge and acquiescence of defendant, had represented to plaintiff that there were no liens of any kind against said vessel; and that plaintiff had acted in reliance upon said representation. Plaintiff prayed that the court enter a judgment "consistent with the rights of the parties hereto and determine amongst other things what liens, if any, existed in favor of said Arques against said vessel, on said 23rd of September, 1935."

Upon the trial, the only claim of lien asserted by defendant was the claim of lien arising out of the 1934 repairs. In his reply brief defendant states that "Coughlin was the sole debtor on that claim; that was the only claim involved in the criminal proceeding." In this action, the trial court found among other things that any money due defendant for repairs made in 1934, when said vessel was known as the "Oregon," was due from Coughlin and not from plaintiff; that Coughlin, in the presence of defendant and with the knowledge and acquiescence of defendant, had represented to plaintiff that there were no liens of any kind against said vessel in June, 1935; and that plaintiff had acted in reliance upon said representation. The trial court thereupon decreed, "That on said September 23, 1935, defendant, D. J. Arques, had no possessory lien on the vessel 'St. Mary' for work done thereon prior to July 1, 1934, and when defendant, J. H. Coughlin, was the sole owner thereof and said vessel was known as the 'Oregon';" and that plaintiff was not liable for said 1934 repairs.

Defendant contends that the judgment is "contrary to law, and the evidence and the facts found." He points to the evidence and findings showing that defendant had made the 1934 repairs and had not been paid therefor. He therefore claims that he was entitled to a possessory lien on the vessel citing Civil Code, section 3051, and *United States of Mexico* v. *Rask,* 118 Cal. App. 21 [4 Pac. (2d) 981], at pages 45 and following. It appears unnecessary to discuss plaintiff's contention that no possessory lien could have resulted from the making of the repairs to the vessel under the circumstances. Assuming, without deciding, that such possessory lien did result from the making of the 1934 repairs, it

appears entirely clear under the evidence and findings that defendant was estopped to assert such lien against plaintiff by reason of his conduct in knowingly permitting plaintiff to act in reliance upon the representation that no such lien existed at the time that plaintiff entered into his agreement with Coughlin and entered into his agreement for the 1935 repairs with defendant. (Code of Civ. Proc., sec. 1962, subd. 3; *Jaekle* v. *Halton*, 25 Cal. App. (2d) 706 [78 Pac. (2d) 441]; *Shull* v. *Doerr*, 110 Cal. App. 613 [294 Pac. 464]; 19 Am. Jur. 667; 10 Cal. Jur. 625, *et seq.*)

Defendant further contends that "The trial court violated the uniform law of this state herein, to-wit: It collaterally attacked and set aside a final judgment." The so-called "final judgment" to which defendant refers is the order granting probation to plaintiff in the criminal proceedings. Defendant points to the fact that plaintiff took no appeal therefrom and he claims that said "final judgment" was necessarily based upon and conclusively established the existence of a possessory lien and that the judgment herein is a "collateral attack" upon said judgment of the Superior Court of Marin County. We find no merit in defendant's contention. The Superior Court of Marin County suspended the imposition of sentence and granted probation to plaintiff. There was therefore no "final judgment" of conviction and plaintiff had no right of appeal. (*In re Phillips*, 17 Cal. (2d) 55 [109 Pac. (2d) 344, 132 A. L. R. 644].) But even assuming that there had been a "final judgment" of conviction in the criminal proceeding, we know of no rule of law which would have prevented plaintiff from again raising, in a subsequent civil action between himself and defendant, any issues previously presented and passed upon in the criminal proceeding and having the court, in the subsequent civil action, render its independent judgment upon such issue. The issues previously determined in the criminal proceeding were not *res judicata* because the parties to the civil action were different from the parties to the criminal proceeding (15 Cal. Jur. 114, sec. 178; 30 Am. Jur. 1002, sec. 290) and no question of collateral attack was involved. *People* v. *Majado*, 22 Cal. App. (2d) 323 [70 Pac. (2d) 1015], cited by defendant, involved a second criminal prosecution of the defendant for failure to provide for his minor child and the same parties were involved on both prosecutions.

Finally, defendant contends that plaintiff "was liable whether he has been convicted of a felony or not or whether he knew of appellant's rights or not." Defendant cites and relies upon the rules relating to conversion as stated in *Byer* v. *Canadian Bank of Commerce,* 8 Cal. (2d) 297 [65 Pac. (2d) 67], at page 300. But here plaintiff was not defending his act of taking possession of the vessel merely upon the ground of his ignorance of defendant's alleged rights. Plaintiff was claiming that his ignorance of defendant's alleged rights was the result of conduct on the part of defendant which estopped defendant from asserting said alleged rights against plaintiff. The rules stated in the cited case are therefore not in point here.

In conclusion, it should be stated that it is suggested in defendant's briefs that, in any event, defendant had a possessory lien on September 23, 1935, by reason of the 1935 repairs. This claim was admittedly not presented in the criminal proceeding nor was it presented in the trial of this action. The parties proceeded upon the theory that the only issue to be determined by the trial court was what possessory lien, if any, defendant had on September 23, 1935, by reason of the 1934 repairs. This is made clear by the opening statement of defendant's counsel where he stated to the trial court that defendant claimed a possessory lien on September 23, 1935, by reason of the 1934 repairs as set forth in paragraph two of the complaint and "that is all we claim under." Perhaps defendant's failure to assert a claim of possessory lien by reason of the 1935 repairs may be explained by the fact that he had previously filed a libel in admiralty based upon said 1935 repairs or by the fact that all cash payments provided for in the written agreement for said 1935 repairs had been made by plaintiff to defendant and the balance of the agreed price was to be paid over a period of time, or by the fact that defendant had failed to complete the work within the time provided in the written agreement. At any rate, defendant may not now change the theory upon which the cause was presented to the trial court in order to obtain a reversal of the judgment on this appeal. (*Ernst* v. *Searle,* 218 Cal. 233, 235, 240 [22 Pac. (2d) 715]; 2 Cal. Jur. 237, sec. 68.)

The judgment is affirmed.

Nourse, P. J., and Dooling, J. pro tem., concurred.