[Civ. No. 18128.   First Dist., Div. One.   June 17, 1959.]

AMERICAN FIRE PROTECTION SERVICE (Individual's Fictitious Name), Appellant, v. BERNARD J. WILLIAMS et al., Respondents.

398·

Irvin Goldstein for Appellant.

Joseph Genser and Thomas Pierce Rogers for Respondents.

HANSON, J. pro tem.*—This is a suit to recover damages brought by the plaintiff, American Fire Protection Service, against the defendant Williams, and others who, it is alleged, aided and abetted him in violating a permanent injunction which restrained Williams from engaging in the flue cleaning business in certain counties of California in competition with the plaintiff and from soliciting the business of persons and corporations who were customers of the plaintiff on and prior to January 2, 1953.

The salient fact which needs to be mentioned here as a preliminary to all of the facts is that Williams prior to June 9, 1950, was engaged, with a partner, in the flue cleaning business. The partnership sold its business on that date to the plaintiff and, by the terms of the sale, each partner agreed that he would not engage in the type of business sold in any of the northern California counties specified and that neither would solicit any of his customers in those counties. Upon the sale of the business the defendant Williams was employed by the plaintiff at a stated salary as an employee and continued to be so employed until January 2, 1953, at which time he left the employ of plaintiff and engaged in a competing business under the name of the A-1 Fire Protection Service. As a consequence of Williams' action the plaintiff instituted a suit to procure an injunction against him. The court in that case, on March 9, 1954, granted a permanent injunction which, by its terms, restrained Williams and A-1 Fire Protection Service from directly or indirectly soliciting or inducing any

---

*Assigned by Chairman of Judicial Council.

customer (in the counties named), who became such customer prior to January 2, 1953, to quit the service of the plaintiffs, and further restraining them from carrying on the flue business and kindred services of the character which had been sold to plaintiff.

On May 7, 1954, Williams sold A-1 Fire Protection Service to Food Products, Inc., one of the companies under which name defendant Stephens operated. At that time and prior thereto, Stephens, the president of the defendant company, had read and was familiar with the terms of the injunction referred to above. Williams was nevertheless hired by defendant at a salary of $575 a month. His duties included solicitation of business, the making of estimates, sales, computation of prices, office work, road work, preparation of job records and schedules, and supervision of other employees. Williams solicited some business, but most of the time Stephens accompanied him. He made some surveys and estimates for the purpose of submitting bids, but the submission of the final bid was only made after consultation with Stephens. With regard to the office work Williams merely typed job sheets in the San Francisco office whereas the billing was handled from the Richmond office. Williams was not really the manager of the San Francisco office as Stephens spent two days a week at that office and the rest of the time at the Richmond office.

On February 9, 1955, plaintiff in the superior court at San Francisco, instituted contempt proceedings for the violation of the injunction against Williams, Stephens, and Food Products, Inc., and all the parties just named were found in contempt by the court.

Thereafter on January 3, 1956, plaintiff filed the instant civil action in the Superior Court of San Mateo County.

In its complaint in this case for damages the plaintiff averred that the injunction that was issued in its favor on March 4, 1954, restrained the defendant Williams not only from engaging in the flue type of business in which plaintiff was engaged, but also restrained Williams from directly or indirectly soliciting or inducing any customer (in the counties named) who became such customers prior to January 2, 1953, to quit the service of the plaintiffs. The complaint then went on to aver that not only had Williams violated the various terms of the injunction but that he was aided and abetted in so doing by the other defendants. The complaint set forth four specific instances of soliciting and inducing customers to quit the services of the plaintiff, to wit: (1) the Uncle H.

Bakery, (2) the Emporium, (3) the Continuation High School, and (4) St. Mary's College.

Turning now to these four "accounts" on which appellant relies as having been solicited contrary to the terms of the injunction we find from the record that the Uncle H. Bakery "account" and the Emporium "account" were both solicited and procured by Stephens when he was accompanied by Williams. Stephens, however, testified that Williams accompanied him to the bakery and the Emporium merely to deliver letters to them stating he could no longer fulfill his obligations under any contracts with regard to the flue cleaning business because he had been restrained from engaging in that business.

Much evidence was elicited with regard to the fact that Williams had made surveys on both the Continuation High School in San Francisco and St. Mary's College in Moraga for the purpose of preparing a bid to submit to these institutions. This evidence was irrelevant with respect to the solicitation charge, because as plaintiff's president admitted, these two institutions were *never* accounts of plaintiff, much less being accounts as of January 1953. Plaintiff's president contended, however, that he construed Williams' action in making the surveys as "engaging in business" of flue cleaning. ▇ However, it would *not* seem that making a survey for an employer in preparation for a bid, so that the employer could make a bid, would amount to "engaging in business" as a matter of law.

▇ At the trial of the action, which is here for review, the trial court proceeded on the theory that the record made on the contempt citation not only was inadmissible in this civil action for damages, but that it could not be treated as an estoppel, or collateral estoppel, or conclusive adjudication upon the issue whether or not the respondents had violated the injunction. We agree with that view. The well-established rule which makes inadmissible a conviction of a criminal offense as proof of the facts upon which the conviction was based is the rule which must be applied here. As was said in *Balestreiri* v. *Arques*, 49 Cal.App.2d 664, 669 [122 P.2d 277], "But even assuming that there had been a 'final judgment' of conviction in the criminal proceeding, we know of no rule of law which would have prevented plaintiff from again raising, in a subsequent civil action between himself and defendant, any issues previously presented and passed upon in the criminal proceeding and having the court, in the subsequent

civil action, render its independent judgment upon such issue. The issues previously determined . . . were not *res judicata* because the parties to the civil action were different from the parties to the criminal proceeding. . . ." ■ See also *Burbank* v. *McIntyre*, 135 Cal.App. 482, 485-486 [27 P.2d 400]: "It is a general rule that a judgment in a criminal prosecution may not be received in a civil action to establish the truth of the facts in which it was rendered, but an exception thereto is recognized where the defendant has entered a plea of guilty, such record then being admitted not as a judgment establishing the fact, but as an admission against interest. [Citations.]" (See also 3 Witkin, California Procedure (1942-1943), § 58; 18 A.L.R.2d 1287.)

The determinative question would thus seem to be the nature of contempt proceedings, whether civil or criminal. If civil, the judgment rendered in the contempt proceeding would operate as a collateral estoppel upon the defendants to deny the facts found by the contempt proceedings; whereas, if criminal, the judgment of conviction would be no bar to the defendant's denying such facts, and such judgment would be inadmissible in the subsequent civil action. That contempt proceedings are criminal in nature is tolerably plain from the cases.

■ Thus, in *H. J. Heinz Co.* v. *Superior Court*, 42 Cal.2d 164 [266 P.2d 5], the court said: "The enforcement of an order of contempt in this state is not for the vindication of a private right but is for the maintenance of the dignity and authority of the court, and to preserve the peace and dignity of the people of the State of California. (*In re Morris, supra*, 194 Cal. 63, 69 [227 P. 914].)" (42 Cal.2d at 175.) ■ And in *Bailey* v. *Superior Court*, 142 Cal.App.2d 47 [297 P.2d 795], the court states: "It is settled . . . that a contempt proceeding is not a civil action but is of a criminal nature even though its purpose is to impose punishment for violation of an order made in a civil action; . . ." (*Id.*, at 53.)
■ The result of the Heinz and Bailey cases would seem to indicate that collateral estoppel would not apply in a civil action brought after a contempt proceeding.

The next contention of the plaintiff-appellant is that the court erred in its findings of fact, and that the facts, as found, are not sustained by any substantial evidence.

■ The appellant urges as error the fact that the trial court made no finding with respect to the fact that the injunction (which the trial court found to exist), restrained the

°

defendant from engaging in the flue cleaning business. It is true that the trial court only found that the injunction restrained the defendant from inducing or endeavoring to induce any customer of plaintiff to terminate its service and did not find specifically that the defendant was enjoined by the injunction from engaging in the flue cleaning business. However, the trial court found that Williams had not engaged in the business. It is difficult to see how the plaintiff is prejudiced by the trial court's not having found exactly what the injunction said.

The appellant also points out that the trial court did not find that the injunction imposed upon the defendants a duty not to violate it. This would not seem properly a finding of fact, but merely a conclusion of law. Since the trial court found that the injunction had not in fact been violated such a finding was not necessary.

On the basis of the facts we have enumerated appellant contends that the defendants had conspired to violate the injunction issued against Williams. If it is granted for the purpose of argument that a finding to the effect that Williams and Stephens had solicited some of the business formerly serviced by the plaintiff and that defendant was engaging in the "flue cleaning business" could have been made, it is, nevertheless, the fact that, the trial court, on the basis of substantial evidence, found that the defendants had not so conspired and that Williams was not engaged in the flue cleaning business.

While the trial court on the evidence which we have recited could have found for plaintiff, it was the exclusive province of that court to appraise and weigh the evidence and the credibility of the witnesses; and under that rule long established in the jurisprudence of this state, there was adequate substantial evidence to sustain the court's findings.

We come then to the next contention of appellant that the evidence was sufficient to support a finding that plaintiff suffered actionable damages by reason of the acts of the defendants and that the court's finding to the contrary based upon the admissible evidence was erroneous.

The only evidence pertaining to actual damages suffered by the plaintiff in relation to the alleged violations by the defendants of the injunction was that it lost $440 per year *gross* in business diverted from it by the defendants. For the breach of a duty, in connection with the plaintiff's business, normally the measure of damages is the loss of profits caused

by the breach. (See *Elsbach* v. *Mulligan,* 58 Cal.App.2d 354, 366-368 [136 P.2d 651].) Profits, of course, are the amount of gross income less the amount of costs. Plaintiff, in this regard, only proved the amount of gross profits it lost and not the net profits. Plainly, the plaintiff did not meet the burden of proving damages. The breach of a duty in a vacuum without damage does not normally give rise to a cause of action.

There remains for consideration the contention that the court erred in holding that the plaintiff was not entitled to recover the attorney fees in the sum of $5,175 it paid or incurred to its counsel in preparing and trying the prior injunction and contempt proceedings. The appellant has not cited any statute or case which allows a recovery for attorney fees expended in prior proceedings of the character here involved.

Generally, fees paid to attorneys are not recoverable from the opposing party either as costs, damages, or otherwise, in the absence of express statutory or contractual authority (*Viner* v. *Untrecht* (1945), 26 Cal.2d 261 [158 P.2d 3]; see also Code Civ. Proc., § 1021).

Appellant cites certain cases which permit a recovery of attorney fees. But these cases give no support to appellant's contention. They are clearly distinguishable and require no mention by us.

Judgment affirmed.

Bray, P. J., and Wood (Fred B.), J., concurred.